Per Curiam:
*712 Plaintiffs-appellants Eitan Eliahu, Dotan Newman, R. David Weisskopf, and Eldad Gidon ("Plaintiffs") appeal from a December 28, 2017 order of the district court dismissing their action against defendants-appellees, current and former officials of the Government of Israel (the "Israeli Officials") and nine charitable organizations and three affiliated individuals. Plaintiffs' claims arise from their dissatisfaction with the outcome of divorce proceedings in Israel and subsequent efforts by their ex-wives, with the assistance of the charitable organizations, to collect child support from them. Weisskopf and Eliahu also appeal the district court's order permanently enjoining them from filing any future action in federal court related to the allegations asserted in this lawsuit without the district court's preauthorization. We affirm the district court's order of dismissal as well as its anti-filing injunction.
I. Order of Dismissal
"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States , 201 F.3d 110, 113 (2d Cir. 2000). On appeal from a dismissal for lack of subject matter jurisdiction, factual findings are reviewed for clear error and legal conclusions are reviewed de novo . Id. For a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), this Court reviews the district court's ruling de novo , "accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." Fink v. Time Warner Cable , 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam). To survive a motion to dismiss for failure to state a claim, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; see also Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
The district court properly dismissed all claims against the Israeli Officials for lack of subject matter jurisdiction because, as foreign government officials acting their official capacity, they are entitled to immunity. See Underhill v. Hernandez , 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897) (recognizing "[t]he immunity of individuals from suits brought in foreign tribunals for acts done within their own states, in the exercise of governmental authority ... as civil officers"); Matar v. Dichter , 563 F.3d 9, 14 (2d Cir. 2009) (recognizing that foreign officials are entitled to immunity for acts performed in their official capacity).
Specifically, the Israeli Officials are eleven registrars or directors of Israel's Enforcement and Collection Authority, a retired *713 Israeli judge, and Israel's former Minister of Justice and Foreign Affairs. Plaintiffs allege that these officials created fictious debts, impeded the payment of debts, and engaged in other similar misconduct while operating under color of Israeli law. Even assuming the officials' challenged conduct was improper under Israeli law, there is no doubt that the conduct was official in nature. See Larson v. Domestic & Foreign Commerce Corp ., 337 U.S. 682, 689-90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) (distinguishing between an official's erroneous exercise of power, which is protected by sovereign immunity, and an official's acts taken in the absence of any delegated power, which are not so protected); Velasco v. Gov't Of Indonesia , 370 F.3d 392, 399 (4th Cir. 2004) (recognizing that foreign sovereign immunity, including foreign official immunity, "models federal common law relating to derivative U.S. sovereign immunity"). Accordingly, the Israeli Officials are entitled to foreign official immunity.
With respect to the remaining defendants, the district court held that Plaintiffs failed to satisfy the domestic injury requirement of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), or identify any requisite predicate acts of racketeering activity, itation index="18" url="https://cite.case.law/citations/?q=18%20U.S.C.%20%C2%A7%201964">id. § 1962(b)-(c). See Appellants' App'x. at 211-14. In addition, the district court held there is no private right of action that allows for Plaintiffs' claims of aiding and abetting a RICO violation, extortion, and mail fraud against defendants in the circumstances here. Id. at 11-12. For substantially the reasons set forth by the district court in its December 28, 2017 order, we conclude that Plaintiffs failed to state a plausible claim for relief as to these defendants as well.
As Judge Pauley correctly concluded, Plaintiffs' allegations that they suffered personal injuries, rather than "injur[ies] to business or property," do not state a cognizable civil RICO claim, Bascunan v. Elsaca , 874 F.3d 806, 817 (2d Cir. 2017), and Plaintiffs' allegations that they suffered business-related injuries fall short because the alleged injuries lack the requisite connection to Plaintiffs' domestic property or financial interests, see ids="12265932" index="21" url="https://cite.case.law/f3d/874/806/#p817">id. at 819. Plaintiffs' claims of extortion, mail fraud, and aiding and abetting a RICO violation fail as well. With respect to the extortion claim, Plaintiffs have not identified a private cause of action under either federal or state law, and the Court is not aware of one. See Wisdom v. First Midwest Bank, of Poplar Bluff , 167 F.3d 402, 408-09 (8th Cir. 1999) (holding that there is no private cause of action under the federal extortion statute, 18 U.S.C. § 1951 ); Minnelli v. Soumayah , 41 A.D.3d 388, 839 N.Y.S.2d 727, 728 (2007) ("[E]xtortion and attempted extortion are criminal offenses [under New York law] that do not imply a private cause of action." (citations omitted)). Similarly, there is no private cause of action under the federal mail fraud statutes cited in the amended complaint, Official Publ'ns, Inc. v. Kable News Co. , 884 F.2d 664, 667 (2d Cir. 1989), or for aiding and abetting a civil RICO violation, see Penn. Ass'n of Edwards Heirs v. Rightenour , 235 F.3d 839, 843-44 (3d Cir. 2000). Thus, we affirm the district court's dismissal of Plaintiffs' claims under Rule 12(b)(6).
II. Anti-Filing Injunction
We also hold that the district court did not abuse its discretion in barring Weisskopf and Eliahu from filing future related actions against defendants without its permission. See Gollomp v. Spitzer , 568 F.3d 355, 368 (2d Cir. 2009) ("We review all aspects of a district court's decision to impose sanctions ... for abuse of discretion." (citation omitted)). In determining whether to restrict a litigant's future ability to sue, a court must consider *714 "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Safir v. U.S. Lines, Inc ., 792 F.2d 19, 24 (2d Cir. 1986) ; see also Richardson Greenshields Sec., Inc. v. Mui-Hin Lau , 825 F.2d 647, 652 (2d Cir. 1987) (explaining that "[a]bsent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation," a court has no power to prevent parties from filing legal documents authorized by the federal rules). We have identified the following factors to be considered in deciding whether to impose an anti-filing injunction:
(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.
Iwachiw v. N.Y. State Dep't of Motor Vehicles , 396 F.3d 525, 528 (2d Cir. 2005) (per curiam) (quoting Safir , 792 F.2d at 24 ).
Here, the district court determined that the first, second, and fourth factors weighed in favor of issuing an anti-filing injunction against Weisskopf and Eliahu: their history of vexatious litigation; their improper motives for pursuing the litigation; and the expense to defendants and burden on the courts. See Appellants' App'x at 217-18. We agree with the district court's assessment as to those three factors, and we additionally conclude that the third and fifth factors also weigh against lifting the anti-filing injunction as to both Weisskopf and Eliahu.
First, we agree that Weisskopf has a demonstrable history of vexatious and baseless litigation against defendants. Id. Prior to this action, Plaintiffs, led by Weisskopf, filed twelve other actions in either federal or state courts throughout the United States.[1] Eliahu does not have the same history as he has only been involved in one of the prior thirteen actions. There is not, however, a strict numerosity requirement that must be met before a district court may exercise its discretion to enjoin a litigant from filing future actions. Rather, the court must consider the record as a whole and the likelihood that the litigant will continue to abuse the judicial process. See Safir , 792 F.2d at 24. In this case, the record contains several indications that Eliahu is likely to engage in further harassing, duplicative, and vexatious litigation against these defendants. As he recently lost in the Northern District of California and on appeal in the Ninth Circuit, Eliahu v. Israel , No, 14-cv-1636, 2015 WL 981517 (N.D. Cal. Mar. 3, 2015), aff'd , 659 F. App'x 451 (9th Cir. 2016), Eliahu was acutely aware that his claims lacked merit. Moreover, Eliahu *715 added his name to the amended complaint in this action, which tracks -- verbatim -- the complaints dismissed in Plaintiffs' prior actions. As the district court observed, "[a]ll of [Weisskopf's and Eliahu's] cases are virtually carbon copies of one another ... depict[ing] the same story, grievances, and requests for relief that federal courts in the United States are not authorized to grant." Appellants' App'x at 217. In these circumstances, Eliahu should not get a "pass" merely because he has filed only one prior lawsuit.
Second, the district court did not err in determining that Weisskopf and Eliahu lacked an objective good faith expectation of prevailing. They were unsuccessful with their claims and defenses in Israel, and yet they came to the United States continuing to press their claims. The dismissal of similar, if not identical, prior actions underscores that both Weisskopf and Eliahu had little, if any, good faith basis for believing they could prevail on their claims. See Iwachiw , 396 F.3d at 529 (upholding anti-filing injunction on appeal entered against plaintiff who brought a similar prior appeal).
With respect to the fourth factor, defendants have continually been forced to defend frivolous lawsuits at not insignificant costs and the courts have been burdened with adjudicating these repeating claims. Appellants' App'x at 217-18. Weisskopf, in particular, has repeatedly sued the Israeli Officials across the United States despite decisions from several courts holding that they lack jurisdiction over these foreign defendants. Likewise, Eliahu has now asserted his meritless claims in four courts -- the Northern District of California, the Ninth Circuit, the Southern District of New York, and now this Circuit -- forcing defendants to defend themselves on both coasts.
While the district court did not discuss the third and fifth factors, we conclude that they also weigh against vacating the anti-filing injunction against Weisskopf and Eliahu. In considering a litigant's status, we have recognized that pro se litigants, in many cases, are entitled to special solicitude, but we have not altogether "excuse[d] frivolous or vexatious filings by pro se litigants." Triestman v. Fed. Bureau of Prisons , 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (citation omitted); Iwachiw , 396 F.3d at 529 n.1 (recognizing that pro se complaints are reviewed using less stringent standards but rejecting the suggestion that ordinary procedural rules in civil litigation should excuse mistakes or frivolous or vexatious filings of pro se litigants). While Plaintiffs filed the amended complaint pro se , evidently they had assistance from counsel. The document plainly appears to have been drafted by, or with the assistance of, an attorney, and Plaintiffs, including Weisskopf and Eliahu, engaged counsel to represent them in arguing against defendants' motion to dismiss. On appeal, Weisskopf is represented by the same counsel and Eliahu proceeds pro se . Thus, at varied stages in this litigation, Eliahu and Weisskopf have received the assistance of counsel. See Iwachiw , 396 F.3d at 529 (noting that "plaintiff appeared pro se below, while four groups of defendants each incurred the expense of being represented by counsel" in considering the parties' respective burdens). We find no basis to afford either Weisskopf or Eliahu the latitude usually granted to pro se litigants.
Finally, as to the fifth factor, we conclude that other sanctions against Weisskopf and Eliahu would be inadequate. Both complain of monetary injuries caused by Israeli judgments against them, but they clearly have the resources to pay the filing fees in actions against defendants in Israel and across the United States. Regardless of the precise details of Plaintiffs' financial circumstances, however, the record *716 demonstrates that monetary sanctions are unlikely to dissuade them from continuing their litigation campaign. Thus, we affirm the district court's order enjoining both Weisskopf and Eliahu from filing future, related actions without its permission.
CONCLUSION
Accordingly, the orders of the district court dismissing this action for lack of subject matter and failure to state a claim and imposing the anti-filing injunction are AFFIRMED . Further, we assess double costs against Weisskopf and Eliahu under Federal Rule of Appellate Procedure 38 and this Court's inherent authority.

See Weisskopf v. Marcus , 695 F. App'x 977 (7th Cir. 2017) ; Eliahu v. Israel , 659 F. App'x 451 (9th Cir. 2016) ; Ben-Haim v. Neeman , 543 F. App'x 152 (3d Cir. 2013) (per curiam); Weisskopf v. Jerusalem Found. , No. 18-cv-5557, 2019 WL 184086 (N.D. Ill. Jan. 14, 2019) ; Ben-Haim v. Avraham , No. 15-cv-6669, 2016 WL 4621190 (D.N.J. Sept. 6, 2016) ; Ettiben-Issaschar v. ELI Am. Friends , No. 15-cv-6441, 2016 WL 97682 (E.D. Pa. Jan. 7, 2016) ; Issaschar v. ELI Am. Friends , No. 14-cv-5527 (E.D. Pa. Nov. 5, 2014); Issaschar v. ELI Am. Friends , No. 13-cv-2415, 2014 WL 716986 (E.D. Pa. Feb. 25, 2014) ; Weisskopf v. Jewish Agency for Israel , Inc ., No. 12-cv-6844 (S.D.N.Y. Apr. 30, 2013); Weisskopf v. Neeman , No. 11-cv-665 (W.D. Wis. Mar. 20, 2013); Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of N.Y., Inc. , 889 F.Supp.2d 912 (S.D. Tex. 2012) ; Ben-Haim v. Edri , 453 N.J.Super. 526, 183 A.3d 252 (2018).